UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICARDO BORBON, | No. 2: 19-cv-1464 KJM KJN P |
| Plaintiff, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| D. SMILEY, et al., | |
| Defendants. | |

Introduction

      Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983. On November 2, 2020, the undersigned vacated defendants' summary judgment motion without prejudice to its reinstatement following the February 25, 2021 settlement conference. (ECF No. 51.) Following the February 25, 2021 settlement conference, this action did not settle. Accordingly, defendants' summary judgment motion is reinstated.

      Defendants move for summary judgment on the grounds that plaintiff failed to exhaust administrative remedies. (ECF No. 36.) For the reasons stated herein, the undersigned recommends that defendants' motion be denied.

////

////

1

<u>Legal Standard for Summary Judgment</u>

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil procedure 56 is met. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)).

"Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." <u>Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.)</u>, 627 F.3d 376, 387 (9th Cir. 2010) (citing <u>Celotex Corp.</u>, 477 U.S. at 325); <u>see also</u> Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>Celotex Corp.</u>, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u> at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. <u>See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the

form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

3

By notice provided on November 21, 2019 (ECF No. 35) and December 20, 2019 (ECF No. 36-6), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (*en banc*); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

Legal Standard for Exhaustion of Administrative Remedies

Section 1997e(a) of the Prison Litigation Reform Act of 1995 (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.§ 1997e(a).  Prisoners are required to exhaust the available administrative remedies prior to filing suit.  Jones v. Bock, 549 U.S. 199, 211 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).

Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, unless "the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint."  Booth v. Churner, 532 U.S. 731, 736, 741 (2001); Ross v. Blake, 136 S. Ct. 1850, 1857, 1859 (2016).  The exhaustion requirement applies to all prisoner suits relating to prison life.  Porter v. Nussle, 534 U.S. 516, 532 (2002).  An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion requirement.  Woodford v. Ngo, 548 U.S. 81, 90-91 (2006).

As the U.S. Supreme Court recently explained in Ross, 136 S. Ct. at 1856, regarding the PLRA's exhaustion requirement:

> [T]hat language is "mandatory": An inmate "shall" bring "no action" (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies.... [T]hat edict contains one significant qualifier: the remedies must indeed be "available" to the prisoner. But aside from that exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any "special circumstances."

Id. (internal citations omitted).

Exhaustion of administrative remedies may occur if, despite the inmate's failure to comply with a procedural rule, prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process.  Reyes

4

v. Smith, 810 F.3d 654, 659 (9th Cir. 2016) (although inmate failed to identify the specific

doctors, his grievance plainly put prison on notice that he was complaining about the denial of

pain medication by the defendant doctors and prison officials easily identified the role of pain

management committee's involvement in the decision-making process).

Plaintiff's Claims

This action proceeds on plaintiff's original complaint against defendants Smiley and

Smith.  (ECF No. 1.)  Plaintiff describes defendants Smiley and Smith as Chief Medical Officers

at Mule Creek State Prison ("MCSP").

Plaintiff alleges that on March 10, 2015, Dr. Tesluk performed a "cataract and implant

surgery" on plaintiff's left eye.  Following the surgery, plaintiff had pain and blurry vision in his

left eye, lasting from April 2015 through December 2015.  Plaintiff repeatedly requested that

defendants Smiley and Smith refer him back to Dr. Tesluk for follow-up care, but they ignored

his requests.

Plaintiff saw Dr. Tesluk again on December 4, 2015.  Plaintiff alleges that Dr. Tesluk

stated that plaintiff developed a retina detachment in the left eye with central macula detached.

Dr. Tesluk recommended that plaintiff undergo repair of retina detachment with vitrectomy,

scleral buckling, mechanical pupil dilation (because of his small pupil), and extended

ophthalmoscopy in the left eye.

Plaintiff alleges that defendants Smiley and Smith failed to submit plaintiff's requests for

services from December 4, 2015, through September 2016 to Dr. Tesluk, which caused plaintiff

to become completely blind in his left eye.  Plaintiff also suffers eye pain.

Plaintiff alleges that during all relevant times, defendants Smiley and Smith were aware

that plaintiff had severe left eye pain and was losing his vision in his left eye.  Plaintiff alleges

that defendants Smiley and Smith were aware of the risks to which plaintiff would be exposed if

they delayed medical treatment for his left eye.

Defendants' Evidence

In the pending summary judgment motion, defendants argue that plaintiff submitted two

relevant administrative grievances concerning his claims, but failed to exhaust either of them

5

1    through the final level of review.  In support of this argument, defendants cite the following

2    evidence.

3         *Defendants' Background Evidence*

4         Inmates are advised of their grievance rights in orientation handbooks and in committee

5    meetings. (ECF Nos. 36-5 at 2; 36-4 at 2.)  Each inmate receives a copy of Title 15, and copies

6    are also available for review in the MCSP and SATF law libraries.  (ECF Nos. 36-4 at 2; ECF No.

7    36-5 at 2.)  Inmates may contact their assigned Correctional Counselor if they have questions

8    concerning submitting an administrative grievance.  (ECF No. 36-4 at 2; ECF No. 36-5 at 2.)

9         Before September 1, 2017, health care appeals were governed by sections 3084-3086 of

10   title 15 of the California Code of Regulations.  (ECF No. 36-3 at 2.)  Under the procedures

11   contained in these sections, health care appeals were subject to three levels of review before

12   administrative remedies were deemed exhausted.  (Id.)

13        New procedures were officially enacted as regulations under California Code of

14   Regulations title 15, § 3087, on September 1, 2017.  (Id.)  In 2019, the health care grievances

15   section was changed without regulatory effect and can now be found at Title 15, §§ 3999.225-

16   3999.237 of the California Code of Regulations.  (Id.)  Under these regulations, inmates may

17   grieve complaints regarding health care policies, decisions, actions, conditions or omissions using

18   a CDCR 602 form.  (Id.)  Such complaints are subject to two levels of review, an institutional

19   level of review, and a headquarters level of review.  (Id.)  Health care grievances are subject to

20   headquarters' disposition before administrative remedies are deemed exhausted.  (Id. at 2-3.)

21        Between March 2015 (the date plaintiff alleges that improper treatment began) and

22   October 20, 2018 (the date plaintiff filed his complaint in the instant action), plaintiff filed two

23   administrative health care grievances related to this action, i.e., grievance nos. MCSP HC-

24   16048527 and SATF HC-17000483.  (ECF Nos. 36-5 at 3-4; 36-4 at 3-4.)

25        *Grievance MCSP HC-16048527*

26        The background to grievance MCSP HC-16048527 follows herein.  On May 5, 2016,

27   inmate Calderon submitted a CDC Form GA-22--Inmate Request for Interview form on

28   plaintiff's behalf to the MCSP Health Care Grievance Office.  (ECF No. 36-5 at 4.)  The form

6

stated, "Sir/ma'am. I/M Borbon filed this (602) w/your office but he attach the form CDCR 1824 just to inform you that he is an (ADA) Inmate but his intentions is for your office to process his." (Id. at 4, 28.)

A Form GA-22 is not a grievance form. (Id. at 4.) Rather, it is a way for inmates to contact staff to request an interview regarding a particular issue. (Id.) Although a Form GA-22 can be a useful tool for a variety of different issues, it is not a substitute for the normal health care grievance process, which is initiated by filing a Form 602-HC. (Id.)

The MCSP Health Care Grievance Office received plaintiff's Form GA-22 on or about May 6, 2016, and construed it as an appeal, assigning it as appeal no. MCSP HC-16048527. (Id.) Two items were attached to plaintiff's Form GA-22. (Id.)

The first item attached to plaintiff's Form GA-22 was an April 28, 2016 response from MCSP's Reasonable Accommodation Panel ("RAP") to a CDCR Form 1824—Reasonable Accommodation Request—submitted by plaintiff. (Id. at 4; 27.) The RAP response indicated that plaintiff requested to see an ophthalmologist due to blindness in his left eye. (Id. at 5, 27.) The RAP response found that no reasonable disability accommodation was required. (Id. at 5, 27.) The RAP response noted that plaintiff's medical concerns were being treated and evaluated by his healthcare team, and that if he disagreed with his treatment, he could file a CDCR Form 602-HC to grieve his concerns. (Id. at 5, 27.) Plaintiff was instructed that if he disagreed with his medical treatment, he should attach the CDCR 1824 along with the RAP response to a new CDCR Form 602-HC and submit it through MCSP's normal appeals process. (Id. at 5, 27.)

The second item attached to plaintiff's Form GA-22 was a Form 602-HC that plaintiff apparently attached to his Form 1824, dated March 31, 2016. (Id. at 5, 18-19.)

On May 6, 2016, the MCSP Health Care Grievance Office issued a response rejecting plaintiff's grievance no. MCSP HC-16048527 as incomplete. (Id. at 6; 21.) The response deemed the grievance incomplete because it did not include a requested action, as required by California Code of Regulations tit. 15, § 3084.6(b)(13). (Id. at 21.) The response also rejected the grievance because plaintiff failed to attach the entire RAP packet, including the original CDCR 1824 Reasonable Accommodation Request form. (Id.) The response required plaintiff to

attach the entire CDCR 1824 form because he disagreed with a RAP response.  (Id.)  The response instructed plaintiff to correct his appeal and resubmit it within thirty calendar days.  (Id.)

On or around June 1, 2016, plaintiff resubmitted his corrected Form 602-HC and attached the initial Form 1824, as instructed.  (Id. at 14.)  On June 29, 2016, Dr. Atienza interviewed plaintiff at the first level of review regarding this grievance.  (Id. at 13.)  Plaintiff told Dr. Atienza that he lost sight after his left cataract surgery in March 2015.  (Id.)  Plaintiff requested to be seen by another eye specialist who could check his eye and make a proper diagnosis to explain the loss of vision.  (Id.)  On July 19, 2016, grievance MCSP HC 16048527 was granted in part at the first level based on Dr. Atienza's submission of a request for plaintiff to see an ophthalmologist.  (Id. at 12-13.)

Because of plaintiff's low TABE score, plaintiff was scheduled for an Effective Communication Interview on July 28, 2016, so that the first level response could be provided and adequately explained to him.  (Id. at 7.)  A TABE score, or Test of Adult Basic Education Score, is a grade point level score that approximates the inmate's educational level.  (Id. at 7, n. 3.)  Plaintiff's TABE score was 2.3.  (Id.)   Defendants provided a copy of the Master Pass List for July 28, 2016, indicating that the pass for plaintiff's interview was issued.  (Id. at 31.)  Defendants did not submit a copy of the pass.

Plaintiff was a "no-show" to the July 28, 2016 interview.  (Id. at 7, 33.)  As a result of the no-show, the first level response would have been mailed to plaintiff via institutional mail (rather than delivered to him at the interview).  (Id.)

MCSP's Health Care Grievance Office has no record of plaintiff submitting appeal no. MCSP HC-16048527 for review at the second level of review.

*Grievance No. SATF HC-17000482*

Plaintiff submitted grievance no. SATF HC-17000482 on or about December 12, 2017. (ECF No. 36-4 at 4, 14.)  Plaintiff wrote in this grievance, "I need to see the specialist in reference to my eye…I have lost my sight completely on my left eye, after a surgery I had for retina detachment.  Before the surgery I was able to see.  I want to know what will be done for me to recover my sight.  I have lots of pain and lots of dripping tears."  (Id. at 14.)

8

The California Substance Abuse Treatment Facility ("SATF") Health Care Grievance Office received this grievance on or about December 19, 2017. (Id. at 12.) On December 22, 2017, plaintiff's Primary Care Provider ("PCP"), Nurse Practitioner ("NP") Hales interviewed plaintiff regarding this grievance. (Id. at 10.) NP Hales wrote,

> Your health care records indicate you were seen by the Primary Care Provider (PCP) on 12/22/2017 who noted retinal detachment in the left eye with no further treatment possible. You have been prescribed the medicated drops atropine and prednisone for pain. Additionally you have an active prescription for the medication Tylenol for pain management.
>
> The PCP notes that a past encounter, on 10/27/2017, also discussed that your left eye blindness is permanent and no further treatment was possible. You were provided the option to return to ophthalmology for left eye enucleation (removal of the eye). A CDCR 7243 Request for Services (RFS) was submitted and you were seen by the ophthalmologist on 2/1/2018 and declined surgery at that time. The specialist recommended yearly follow up.
>
> If you are dissatisfied with the Institutional Level Response submit the entire health care grievance package for Headquarters' Level Review.

(Id. at 10-11.)

On February 21, 2018, the SATF Health Care Grievance Office granted grievance SATF HC-17000482 at the institutional level of review insofar as plaintiff's medical records were reviewed, he was seen by his PCP (NP Hales), given the opportunity to explain his issues, and offered to proceed with enucleation of his eye, for which no further treatment was possible. (Id.) The institutional level decision informed plaintiff that if he was dissatisfied with the response, he should submit the entire health care grievance package for Headquarters' Level Review. (Id. at 11.)

SATF mailed the institutional level response to plaintiff on or around February 18, 2018. (Id. at 12.) Plaintiff did not submit this grievance to the Headquarters' Level of Review. (ECF No. 36-3 at 3.)

Plaintiff's Opposition

On June 26, 2020, plaintiff filed an opposition to defendants' summary judgment motion. (ECF No. 45.) Plaintiff signed the opposition under penalty of perjury. (Id. at 4.) However, it

9

1   appears that some of the claims made in the opposition are by the inmate who helped plaintiff

2   prepare the opposition.

3        The opposition alleges that plaintiff does not speak English and cannot read or write

4   English.  (<u>Id.</u> at 2.)  The opposition alleges that "this writer," apparently the inmate who helped

5   plaintiff prepare the opposition, has never seen a copy of Title 15 written in Spanish in his 34

6   years of incarceration.  (<u>Id.</u>)  The opposition alleges that "this writer" has not seen anyone with an

7   orientation handbook, let alone one in Spanish.  (<u>Id.</u>)

8        The opposition alleges that while all committees advise inmates of their rights to appeal

9   their decisions, the committees have never explained the inmate appeal process to "this writer" in

10  any committee.  (<u>Id.</u> at 2-3.)  The opposition alleges that it has been no different for plaintiff:  he

11  has not been given an orientation handbook or a copy of title 15 written in Spanish.  (<u>Id.</u> at 3.)  In

12  addition, plaintiff has not been informed how the appeals process works.  (<u>Id.</u>)  The opposition

13  states that "the writer" has to have a Spanish speaking bilingual inmate translate so that he can

14  ask plaintiff relevant questions.  (<u>Id.</u>)

15       Finally, the opposition states that,

16          The only thing that [plaintiff] was ever informed of was the fact that
            his Inmate/Parolee Appeal had been granted in part that he would be
17          seen by another ophthalmologist.  This was explained to [plaintiff]
            by another bilingual speaking inmate.  [Plaintiff] was completely
18          satisfied with his appeal having been partially granted.

19  (<u>Id.</u>)

20  <u>Discussion</u>

21       At the outset, the undersigned finds that plaintiff does not dispute that the only two

22  grievances he filed regarding the claims raised in the instant are grievance nos. MCSP HC-

23  16048527 and SATF HC-17000483.  It is also undisputed that plaintiff failed to exhaust either of

24  these grievances to the final level of review.

25       Plaintiff's opposition raises two arguments:  1) his failure to exhaust administrative

26  remedies is excused because he does not read, write or speak English, and the appeals process

27  was never explained to him in Spanish; and 2) he was not required to further appeal the grievance

28  with which he was satisfied.

*Was Plaintiff Required to Further Appeal a Grievance the Results of Which He Was Satisfied?*

In essence, plaintiff argues that he was not required to appeal MCSP HC-16048527 beyond the first level because he was satisfied with the partial grant of the appeal at the first level by Dr. Atienza, who granted plaintiff's request to see an ophthalmologist. In support of this argument, plaintiff cites Harvey v. Jordan, 605 F.3d 681, 685 (9th Cir. 2010). (ECF No. 45 at 4.)

In Harvey the Ninth Circuit held that the plaintiff "had exhausted the administrative process when the prison officials purported to grant relief that resolved his due process grievance to his satisfaction." Harvey, 605 F.3d at 686. The Ninth Circuit reasoned,

> An inmate has no obligation to appeal from a grant of relief, or a partial grant that satisfies him, in order to exhaust his administrative remedies. Nor is it the prisoner's responsibility to ensure that prison officials actually provide the relief that they have promised. See Abney v. McGinnis, 380 F.3d 663, 669 (2d Cir.2004) ("A prisoner who has not received promised relief is not required to file a new grievance where doing so may result in a never-ending cycle of exhaustion.").
>
> That [plaintiff] initially requested alternative forms of relief does not change our analysis. Once the prison officials purported to grant relief with which he was satisfied, his exhaustion obligation ended. His complaint had been resolved, or so he was led to believe, and he was not required to appeal the favorable decision. Were we to reach the contrary conclusion, any prisoner who expressed his willingness to accept more than one form of relief—demonstrating a flexibility that increases the likelihood of an outcome satisfactory to both the prisoner and the prison officials—would have no recourse when prison officials purported to grant one of those alternative forms of relief, but then failed to implement their decision

605 F.3d at 685.

In the reply, defendants argue that plaintiff's reliance on Harvey is misplaced. Citing Benitez v. Cty. of Maricopa, 667 F.Appx. 211, 212 (9th Cir. 2016), defendants argue that the Ninth Circuit clarified that the holding of Harvey "turned on the fact that the prisoner was induced into abandoning his appeal by the unfulfilled promise of relief."

In Benitez, the Ninth Circuit clarified that the holding of Harvey "turned on the fact that the prisoner was induced into abandoning his appeal by the unfulfilled promise of relief." On appeal, the plaintiff in Benitez argued that because the prison granted his request for an ADA

11

accommodation, he had no obligation to appeal from the satisfactory resolution of his ADA grievance.  Id.  The Ninth Circuit found that the plaintiff's reliance on Harvey v. Jordan was misplaced because in Harvey,

> we explained that an "inmate has no obligation to appeal from a grant of relief, or a partial grant that satisfies him, in order to exhaust his administrative remedies." Id. at 685.  But this case is not like Harvey, which turned on the fact that the prisoner was induced into abandoning his appeal by the unfulfilled promise of relief.

Id.

In the instant case, plaintiff alleges that he abandoned grievance MCSP HC-16048527 because Dr. Atienza granted his request for relief, i.e., to see an eye specialist.  Because the record was not clear whether or when plaintiff saw an eye specialist after Dr. Atienza partially granted this request on July 19, 2016, on July 17, 2020, the undersigned ordered the parties to file further briefing addressing this issue.  (ECF No. 48.)  In this order, the undersigned observed that in the complaint, plaintiff suggested that he did not see an ophthalmologist before his transfer to SATF on September 13, 2016, i.e., approximately two months after Dr. Atienza partially granted MCSP HC-16048527 on July 19, 2016.  (Id. at 2, n. 1.)  The undersigned observed that in grievance SATF HC-17000483, filed December 12, 2017, plaintiff again requested to see an eye specialist.  (Id.)  The records from SATF HC-17000483 state that plaintiff was seen by the ophthalmologist on February 1, 2018.  (Id.)  The undersigned observed that it was not clear if plaintiff's February 1, 2018 examination was the first time plaintiff saw an ophthalmologist regarding his left eye after July 19, 2016.  (Id.)

On August 6, 2020, defendants filed a response to the July 17, 2020 order.  (ECF No. 49.)  Defendants state that February 1, 2018, was not the first time plaintiff was seen by an ophthalmologist following the July 19, 2016 partial grant of grievance MCSP HC 16048527.  Defendants state that plaintiff was seen by ophthalmologists on the following dates:  1) August 19, 2016 appointment with Retinal Consultant Group, Inc. (Id. at 6-10), 2) December 28, 2016 appointment with Sani Eye Center (Id. at 11-13); and 3) June 12, 2017 appointment with Sani Eye Center (Id. at 14-15).

////

On August 10, 2020, plaintiff filed a response to the July 17, 2020 order. (ECF No. 50.) Plaintiff states that after the partial grant of grievance MCSP HC 16048527 on July 19, 2016, he was seen by an ophthalmologist on the following dates: February 1, 2018, October 25, 2018 and January 14, 2019. (Id.) Plaintiff does not attach any medical records to his August 10, 2020 response.

Defendants' August 6, 2020 pleading attaches medical records showing that plaintiff saw ophthalmologists on August 19, 2016, December 28, 2016, and June 12, 2017. The records from these examinations indicate that plaintiff's problems with his left eye were addressed at those examinations. Based on these records, the undersigned finds that plaintiff timely received the relief he was promised on July 19, 2016, by the partial grant of grievance MCSP HC-16048527, i.e., to be seen by an ophthalmologist. Therefore, Harvey v. Jordan is not applicable to this case because plaintiff did not abandon his appeal due to an unfulfilled promise of relief.

*Is Plaintiff's Failure to Exhaust Excused Because He Does Not Speak English?*

For purposes of these findings and recommendations, the undersigned accepts plaintiff's claim that he does not speak, read or write English. Defendants do not dispute this claim.[1]

At the outset, the undersigned considers whether plaintiff's inability to speak, read or write English excuses his failure to exhaust administrative remedies.

In Ross v. Blake, the Supreme Court found "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." 136 S. Ct. at 1858-59. These circumstances include: "(1) when the administrative procedure 'operates as a simple dead end' because officers are 'unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when the administrative scheme is 'so opaque that it

---

[1]   In his verified opposition, plaintiff alleges that he does not speak, read or write English. As discussed above, it is clear that another inmate helped plaintiff prepare his opposition. The undersigned also observes that an interpreter appeared with plaintiff at the settlement conference conducted in this action on February 25, 2021. Based on these circumstances, the undersigned is puzzled by the statement in the declaration of D. Azevedo, MCSP Health Care Grievance Coordinator, submitted by defendants, that plaintiff has a TABE score of 2.3. It is unclear if prison officials measured plaintiff's TABE score based on his educational level in Spanish or English. The court may explore this issue at an evidentiary hearing, as discussed herein.

becomes, practically speaking, incapable of use' because 'no ordinary prisoner can discern or navigate it'; and (3) when prison administrators 'thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" Andres v. Marshall, 867 F.3d 1076, 1078 (9th Cir. 2017) (quoting Ross, 136 S. Ct. at 1858-59). However, "we expect that these circumstances will not often arise." Ross, 136 S. Ct. at 1859 (citation omitted). The Ninth Circuit characterized the list in Ross as "non-exhaustive." Andres, 867 F.3d at 1078. Various other circumstances render administrative remedies unavailable, including the failure of prison officials to properly process a prisoner's grievance. Id. at 1079.

In a case decided after Ross v. Blake, the Seventh Circuit held that administrative remedies were not "available" when those remedies were described to the prisoner by prison officials in a language they knew he could not understand. Ramirez v. Young, 906 F.3d 530 (7th Cir. 2018). In reaching this holding, the Seventh Circuit found that remedies are available only if a prisoner has been notified of their existence. 906 F.2d at 535 (citing Hernandez v. Dart, 814 F.3d 836, 842 (7th Cir. 2016); King v. McCarty, 781 F.3d 889 (7th Cir. 2015), overruled on other grounds by Henry v. Hulett, 969 F.3d 769 (7th Cir. 2020)). "'Prisoners are not expected '"to divine the availability of the grievance procedures."'" Id. (internal citations omitted.) Existing remedies processes are available only if communicated "in a way reasonably likely to be understood." Id. (citing Roberts v. Neal, 745 F.3d 232, 235 (7th Cir. 2014)).

Based on the Seventh Circuit's reasoning in Ramirez v. Young, the undersigned finds that administrative remedies were not available to plaintiff if they were not communicated to him in a language he understood, i.e., Spanish.

As stated above, in the opposition plaintiff alleges that he was not given an orientation handbook or a copy of title 15 written in Spanish. He also alleges that he was not informed how the appeal process works. In essence, plaintiff argues that administrative remedies were unavailable because the procedures for filing grievances were not explained to him in Spanish. See Nunez v. Duncan, 591 F.3d 1217, 1224 (9th Cir. 2010) (an administrative remedy is not available if a prisoner, through no fault of his own, was prevented from availing himself of it).

////

On July 6, 2020, defendants filed a reply to plaintiff's opposition. (ECF No. 47.) Defendants argue that plaintiff's opposition does not indicate whether plaintiff requested a copy of CDCR regulations in Spanish. Defendants cite CDCR regulations providing that:

> Spanish language copies of rules and regulations … shall be maintained at each reception center, institution, and facility where inmates are confined. Notice shall be given in Spanish that a Spanish version of the rules is available for inspection. These rules shall be made available for review by Spanish speaking inmates who cannot read English.

Cal. Code Regs. tit. 15, § 3002(a)(1).

Defendants also argue that plaintiff does not indicate whether he ever requested that anyone explain the grievance process to him. Defendants also argue that plaintiff does not indicate whether he ever contacted his Correctional Counselor for assistance. Defendants argue that plaintiff concedes that he sought the help of Spanish-speaking bilingual inmates to translate for him. Defendants argue that plaintiff does not indicate why this approach was inadequate in this instance.

In their declaration filed in support of the pending motion, MCSP Health Care Grievance Coordinator Azevedo states, in relevant part,

> Inmates are advised of their grievance rights in orientation handbooks and in committee meetings. Each inmate receives a copy of Title 15, and copies are available for review in MCSP's law library. Inmates may also contact their assigned Correctional Counselor if they have any questions concerning submitting an administrative grievance.

(ECF No. 36-5 at 2.)

Health Care Grievance Coordinator Azevedo also states that MCSP records show that between March 2015 and October 20, 2018, plaintiff submitted one health care related grievance: MCSP HC 16048527. (Id. at 3-4.) In their declaration submitted in support of the pending motion, SATF Health Care Grievance Office Employee Roberts states that SATF records show that between March 2015 and October 20, 2018, plaintiff submitted one health care related grievance: SATF HC 1700483. (ECF No. 36-4 at 3-4.) The record contains no evidence regarding other grievances submitted by plaintiff. In other words, the record contains no

15

evidence that plaintiff pursued other grievances to the final level of review, which would demonstrate his knowledge of the grievance process.

The undersigned makes the following findings regarding the evidence presented concerning plaintiff's claim that he did not exhaust administrative remedies because he does not speak, read or write English. First, while the regulation cited above required MCSP and SATF to post notices in Spanish that copies of the "rules and regulations" were available in the law library in Spanish, the record contains no evidence regarding what these notices actually stated. It is unclear if the notices specifically stated that Spanish speaking versions of the rules regarding administrative grievance procedures were available *or* if the notices generally stated that Spanish version of "rules and regulations" were available. Without additional information regarding the content of the notices in MCSP and SATF, the undersigned cannot determine whether plaintiff received adequate notice in Spanish that information in Spanish regarding administrative grievances procedures was available in the law library.

Defendants represent that inmates are advised of the grievance procedures in orientation handbooks and at committee meetings. However, it is not clear if the orientation handbooks are available in Spanish. The undersigned also does not find that MCSP Health Care Grievance Coordinator Azevedo's statement that inmates are made aware of the grievance procedures at committee meetings is persuasive evidence of plaintiff's knowledge of the grievance procedures. In his declaration MCSP Health Care Grievance Coordinator Azevedo does not describe these committee meetings where the grievance procedures may be discussed and nor do defendants provide any evidence of a specific committee hearing where the grievance procedures were described to plaintiff in Spanish.

Defendants also claim that plaintiff could have asked his counselor about the grievance process. However, defendants provide no evidence that plaintiff's counselor speaks Spanish. Moreover, it is unclear if plaintiff would have known to ask a counselor (or anyone else for that matter, including other inmates) about the grievance process after receiving the first level responses to his grievances. In other words, if plaintiff did not know that another level of review was available, it is unclear how he would have known to ask his counselor (or anyone else) about

1   further appealing his grievances.  See Ramirez v. Young, 906 F.3d at 535 ("Prisoners are not

2   expected '"to divine the availability of the grievance procedures.")

3          The undersigned considered the evidence that plaintiff failed to appear for his July 28,

4   2016 Effective Communication Interview so that the first level response to grievance MCSP HC-

5   16048527 could be explained to him.  However, the record does not contain the ducat informing

6   plaintiff of the interview.  Therefore, it is not clear if the ducat was in English or Spanish and

7   whether it informed plaintiff that the purpose of the Interview was to discuss the response to his

8   grievance.

9          The undersigned also observes that the forms for the grievances, including those

10  submitted by plaintiff and containing the responses by prison officials, are written in English.

11         For the reasons discussed above, the undersigned cannot find that administrative remedies

12  were available to plaintiff, based on the undisputed fact (for purposes of these findings and

13  recommendations) that plaintiff does not read, write or speak English.  Based on the current

14  record, plaintiff's claim that he did not exhaust administrative remedies because he did not

15  understand the grievance procedures because they were not explained to him in Spanish is

16  plausible.  Cf. De La Cruz v. Graber, 2017 WL 4277129, at *7 (C.D. Cal. June 15, 2017)

17  (undisputed evidence that Spanish speaking inmate was aware of grievance procedure, utilized

18  the procedure on multiple occasions, completed the administrative remedy process at least once,

19  filed his administrative remedy in coherent English demonstrates that administrative remedies

20  available).  Accordingly, the undersigned recommends that defendants' summary judgment

21  motion be denied on these grounds.

22         Defendants have not requested an evidentiary hearing to resolve the disputed factual

23  issues regarding whether plaintiff's inability to read, write or speak English prevented him from

24  exhausting administrative remedies.  See Albino Baca, 747 F.3d 1162, 1170 (9th Cir. 2014).

25  Defendants may file a request for an evidentiary hearing within fourteen days of the date of this

26  order.  If defendants do not file a request for an evidentiary hearing within that time, the issue is

27  waived.

28  ////

Accordingly, IT IS HEREBY that:

1.  Defendants' summary judgment motion (ECF No. 36) is reinstated;

2.  Defendants are granted fourteen days from the date of this order to file a request for an evidentiary hearing; if defendants do not file a request for an evidentiary hearing within that time, the issue is waived;

IT IS HEREBY RECOMMENDED that defendants' summary judgment motion (ECF No. 36) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  May 11, 2021

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Borbon1464.sj(2)

18